# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| S&K LEIMKUEHLER, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:18-cv-00686-NKL |
| BARCEL USA, LLC, et al., | ) |
| Defendants. | ) |

**ORDER**

Before the Court is defendants Barcel USA, LLC and Bimbo Bakeries USA, Inc.'s motion to dismiss, Doc. 6.[1] For the following reasons, Defendants' motion to dismiss is granted in part and denied in part.

**I.   Background**[2]

S&K and Barcel entered into an oral distribution agreement, wherein in exchange for S&K using its best efforts to distribute Barcel products, Barcel agreed to make S&K the exclusive distributor of Barcel products in Missouri and Kansas. Pursuant to that agreement, S&K operated as the exclusive distributor of Barcel products in Missouri and Kansas from 2008 into 2018, investing hundreds of thousands of dollars to establish, build, and grow a market for Barcel

---

[1] The motion before the Court was also filed on behalf of defendant Scott M. DeVita. However, S&K filed a notice of voluntary dismissal as to its claims against DeVita on September 17, 2018. Doc. 14. Thus, the Court need not address the merits of Defendants' motion to dismiss as it pertains to the claims against DeVita.

[2] For purposes of deciding the motion to dismiss, the Court accepts the factual allegation made in Plaintiff's Petition, Doc. 1-2, as true and construes them in the light most favorable to Plaintiff. *See Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

products. On April 11, 2018, Barcel delivered a letter to S&K stating that it would end all sales of its products to S&K and any authorization S&K had to distribute its products effective July 23, 2018. Barcel and Bimbo began supplying Barcel products to S&K customers themselves.

On July 13, 2018, S&K filed suit against Defendants in the Circuit Court of Jackson County, Missouri. On August 30, 2018, Defendants removed the case to federal court. Defendants then filed the pending motion to dismiss.

## II. Discussion

Defendants move to dismiss all of S&K's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim has facial plausibility when its allegations rise above the "speculative" or "conceivable," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007), and where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Such a complaint will be liberally construed in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

### A. Count I – Breach of Contract against Barcel

Count I alleges that Barcel breached an oral contract with S&K by violating the terms of the agreement and by terminating the agreement without paying S&K a fair value for the distribution routes and customer relationships. Doc. 1-2 (Petition), ¶¶ 54–62. To state a claim for breach of contract, S&K must plead 1.) the "existence of a valid contract"; 2.) the "rights and

obligations of each party"; 3.) breach; and 4.) damages. *Best Buy Builders, Inc. v. Siegel*, 409 S.W.3d 562, 564 (Mo. App. 2013).

Barcel argues that S&K has failed to state a claim for breach of contract because the alleged oral contract, establishing a distribution agreement, is unenforceable under the statute of frauds, which generally requires a writing to enforce an agreement for the sale of goods exceeding $500. *See* Mo. Rev. Stat. § 400.2-201. Barcel asserts that the distribution agreement is a contract for the sale of goods because S&K had to first purchase the products from Barcel before it could distribute them.

However, the test for determining whether a contract is for the sale of goods, "is whether 'the predominant purpose or character' of the agreement is the sale of goods or something else." *United Indus. Syndicate, Inc. v. W. Auto Supply Co.*, 686 F.2d 1312, 1314 (8th Cir. 1982). Even where the sale of goods is a substantial part of the transaction, "the dominant purpose of a particular agreement may be independent of such sales and, hence, be outside the UCC statute of frauds." *Id.* at 1315. Moreover, under Missouri law, "distributorship agreements are not covered by Article 2 [Statute of Frauds]." *Vigano v. Wylain, Inc.*, 633 F.2d 522, 525 (8th Cir. 1980) (citing *Tile-Craft Prods. Co. v. Exxon Corp.*, 581 S.W.2d 886, 889 (Mo. Ct. App. 1979)); *Adventure Mktg. Grp., Inc. v. Premier Specialty Brands, LLC*, No. 13-3022-CV-S-DW, 2013 WL 12355438, at *3 (W.D. Mo. June 6, 2013) ("Under Missouri law, distributorship agreements are not covered by UCC Article 2.") (analyzing Mo. Rev. Stat. § 400.2-201).

The oral agreement pled by S&K, on its face, is not a contract for the sale of goods. S&K pled formation of a distribution agreement whereby in exchange for creating a distribution network for Barcel products in Missouri and Kansas, Barcel agreed to make S&K its exclusive distributor in the market. Doc. 1-2, ¶¶ 13–16. S&K has not alleged an oral contract obligating either party

to purchase or sell a particular quantity of goods, at a set price, or with a specified delivery date. This, coupled with the character, decade-long duration, and mutual dependence of the alleged distributor relationship between S&K and Barcel, bears little resemblance to a one-time, buy-sell agreement. *See United Indus. Syndicate, Inc.*, 686 F.2d at 1315. As pled, the dominant purpose of the alleged distribution agreement is independent of S&K's purchase or sale of Barcel products, and thus outside the statute of frauds.[3]

Next, Barcel argues that S&K has failed to state a claim for breach of contract because the alleged oral contract is for an indefinite period of time and thus terminable at will. Under Missouri law, "[a] contract for an indefinite period of time may be terminated at the will of either party." *Sharp v. W. & W. Trucking Co.*, 421 S.W.2d 213, 218 (Mo. 1967); *Lockewill, Inc. v. U.S. Shoe Corp.*, 547 F.2d 1024, 1028–29 (8th Cir. 1976) ("The law of Missouri . . . appears to be that where the parties to a . . . distributorship agreement which is silent as to duration and which does not deal specifically with termination begin to perform thereunder, the agreement is construed to be terminable at the will of either party."). However, an agreement for a period of time that is

---

[3] Barcel also argues, for the first time in its reply, that even if the distribution agreement is not a contract for the sale of goods it is still subject to the statute of frauds because the contract could not be performed within one year, citing Missouri Revised Statute, section 432.010. Doc. 26 (Defendants' Reply), p. 3. However, the Court will not consider an argument raised for the first time in a reply. *See Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 608, n.4 (8th Cir. 2004); *see also* Doc. 21 (Plaintiff's Response), p. 2, n.2 ("Barcel did not move for dismissal under the other, older Statute of Frauds, R.S.Mo. § 432.010, and so that 'defense' has not be [sic] properly raised and should not be considered."). Defendant asserts that its section 432.010 argument is in response to revised allegations in Plaintiff's response regarding the contract's termination standard. Doc. 26, p. 3, n.9. However, Defendants had an adequate opportunity to raise a section 432.010 argument in their initial suggestions in support of their motion to dismiss, but did not. Additionally, partial performance can render an oral contract enforceable, even if performance would have lasted more than one year. *See Crest Constr. II, Inc. v. Hart*, 487 S.W.3d 85, 98 (Mo. Ct. App. 2016) ("Partial performance is one of the permissible equitable exceptions to the statute of frauds."); *Teter v. Glass Onion, Inc.*, 723 F. Supp. 2d 1138, 1150 (W.D. Mo. 2010) ("an implied contract based on the parties' course of dealing can arise even though it was not reduced to writing").

"definitely ascertainable by any fixed criterion," such as one that ends "upon the completion of a given undertaking, or upon the happening of some event," creates a definite duration. *Superior Concrete Accessories v. Kemper*, 284 S.W.2d 482, 490 (Mo. 1955). *Contra Ditto, Inc. v. Davids*, 457 S.W.3d 1, 9 (Mo. Ct. App. 2014) (stating an "agreement which fixes no specific termination date [either expressly or by necessary implication] is a contract . . . for an indefinite period"). An implied termination date must me "susceptible of calculation" to establish a definite duration. *Ditto, Inc.*, 457 S.W.3d at 10.

In relevant part, S&K's Petition states that the distribution agreement was to "continue year to year so long as S&K continued to grow the market for the Products in Kansas and Missouri." Doc. 1-2, ¶ 57. While S&K asserts that this fixes an implied termination date, by tying termination to S&K's failure to "grow the market," this clause cannot be construed as establishing a specific termination date. S&K could decide not to continue to grow the market at any point in time. When S&K would decide to no longer grow the market for Barcel's products could not be ascertained, making the duration of the contract indefinite and, thus, terminable at will. *See Superior Concrete Accessories*, 284 S.W.2d at 490; *see also Raskas Foods, Inc. v. Sw. Whey, Inc.*, 978 S.W.2d 46, 50 (Mo. Ct. App. 1998) (concluding contract was for an indefinite duration because one party could decide to stop serving the other party's customers at any point in time, applying Illinois law). Moreover, the subjective determination as to what constitutes market growth or how much growth was required before the contract terminated is too indefinite to enforce, making the alleged contract terminable at will. *See Raskas Foods Inc.*, 978 S.W.2d at 50.[4]

---

[4] The Court's finding that the alleged oral contract is terminable at will takes it outside of the statute of frauds. *See Downey v. McKee*, 218 S.W.3d 492, 496 (Mo. Ct. App. 2007) ("Contracts that do not expressly limit the time of the contract or that are terminable at will . . . are, therefore, outside the statute of frauds.").

5

This does not, however, preclude S&K from stating a claim for breach of contract because termination of the agreement is not the only breach S&K alleges. S&K also alleges that Barcel breached its agreement with S&K prior to and upon termination by distributing product in S&K's territory; allowing others to distribute in S&K's territory; contacting S&K customers and instructing them not to buy from S&K; misusing confidential and trade secret information; failing to provide product and use best efforts; and failing to pay S&K for the fair value of the distribution routes at termination. Doc. 1-2, ¶¶ 31, 38–43, 61.

Third, Barcel argues that S&K's allegations of breach of contract are conclusory on their face and thus insufficient to survive a motion to dismiss. However, unlike fraud, a breach of contract claim is not subject to a heightened pleading standard. To survive a motion to dismiss, S&K's Petition need allege only enough facts to state a claim for breach of contract that is "plausible on its face." *Twombly*, 550 U.S. at 547. S&K's Petition alleges the existence of an oral contract. The Petition details the parties' rights and obligations pursuant to that agreement and alleges breach by Barcel, resulting in damage to S&K.

Therefore, Barcel's motion to dismiss Count I is denied.

### B. Count II – Breach of Implied Covenant of Good Faith & Fair Dealing against Barcel

Count II alleges that Barcel "breached the covenant of good faith and fair dealing by committing acts contrary to the agreement between the parties, as specified above." Doc. 1-2, ¶¶ 63–67. "Under Missouri law, a duty of good faith and fair dealing is implied in every contract." *Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Trust Co.*, 464 S.W.3d 177, 185 (Mo. 2015). A breach occurs when the defendant frustrates the contract by acting in bad faith, for example, by "eva[ding] the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or

failure to cooperate." *Compass Bank v. Eager Rd. Associates, LLC*, 922 F. Supp. 2d 818, 826 (E.D. Mo. 2013) (quoting Restatement (Second) of Contracts § 205 cmt. d).

Barcel argues that S&K fails to state a claim for breach of the implied covenant of good faith and fair dealing because: 1.) no enforceable contract exists; 2.) the claim merely reiterates its breach of contract claim; and 3.) Barcel had every right to terminate a relationship upon reasonable notice. However, S&K's allegations include conduct other than Barcel's termination of the agreement such that Barcel's asserted right to terminate the relationship is not determinative. Having determined that S&K has sufficiently pled a claim for breach of contract, the Court need only address Barcel's second argument.

Here, S&K has not merely reiterated its breach of contract claim. In addition to pleading a claim for breach of contract based on the terms of the contract, S&K has pled bad faith on the part of Barcel aimed at frustrating the parties' distribution agreement and agreement to use best efforts. S&K alleges that it "acted in good faith and dealt fairly with Barcel," while Barcel, in contrast, did not. Doc. 1-2, ¶ 66. Specifically, S&K alleges that Barcel instructed S&K customers to stop accepting product from S&K and "intentionally delayed product and delivered the wrong and/or damaged product" in a bad faith attempt to frustrate the parties' distribution agreement. *Id.* at ¶¶ 39–44.

Therefore, Barcel's motion to dismiss Count II is denied.

### C. Count III – Promissory Estoppel against Barcel

Count III alleges that S&K "expended significant effort, time, and money" creating and expanding a market for Barcel products in reliance on Barcel's promises, and that it would be an injustice if the promise is not enforced. *Id.* at ¶¶ 68–77. To state a claim of promissory estoppel, S&K "must allege a promise made by the defendant; foreseeable, detrimental reliance on the

7

promise by the plaintiff; and that an injustice would occur unless the promise is enforced." *Robbe v. Webster Univ.*, 98 F. Supp. 3d 1030, 1036 (E.D. Mo. 2015).

Barcel argues that an oral agreement that S&K would remain an exclusive distributor so long as it "continued to grow the market" is not sufficiently definite to support a claim of detrimental reliance. However, Barcel's alleged promise that the agreement would continue so long as S&K continued to grow the market is not the sole basis of S&K's promissory estoppel claim. Doc. 1-2, ¶¶ 13–18, 22–24, 58, 69–74. Rather, S&K alleges that its actions were also taken in reliance upon Barcel's "promise to compensate S&K" if it terminated the distribution relationship. Doc. 21 (Response), p. 5; Doc. 1-2, ¶¶ 14 ("based on Barcel's history and course of conduct, as well as representations made, S&K understood that Barcel would make a termination payment to S&K"), 17 ("Both parties understood and agreed . . . that [the relationship] could not be terminated by Barcel unless Barcel paid S&K for the value of the distribution network, routes, and customer base"), 58 ("Barcel was required to make a termination payment to S&K in the event Barcel terminated the distribution relationship"). Count III specifically states that S&K, in foreseeable reliance on Barcel's "promises," expended its time and money to grow a market for Barcel products "with the understanding and expectation that Barcel would make a termination payment to S&K in the event Barcel terminated the distribution relationship, to compensate S&K for its routes, relationships, [and] the time and money spent in building the distribution network." *Id.* at ¶ 73. S&K alleges that it detrimentally relied on Barcel's promises and that it would be unjust to allow Barcel to take S&K's network without enforcement of Barcel's promise to compensate S&K. *Id.* at ¶ 75; *see also Miskimen v. Kansas City Star Co.*, 684 S.W.2d 394, 402 (Mo. App. 1984) (concluding it would be "manifestly unfair" to terminate distributor's route without compensation).

Therefore, Barcel's motion to dismiss Count III is denied.

### D. Count IV – Unjust Enrichment against Barcel and Bimbo

Count IV alleges that defendants Barcel and Bimbo have been unjustly enriched by taking S&K's routes without compensation. Doc. 1-2, ¶¶ 78–84. To state a claim for unjust enrichment, S&K must plead 1.) a benefit conferred by plaintiff on defendant; 2.) defendant's appreciation of the benefit; and 3.) acceptance and retention of the benefit by defendant in circumstances that make retention inequitable. *Herz Corp. v. RAKS Hosp., Inc.*, 196 S.W.3d 536, 543 (Mo. App. 2006).

Defendants argue that S&K's unjust enrichment argument fails because it sounds purely as a breach of contract action. However, the similarity of the allegations is of no consequence at the pleading stage; S&K may plead both breach of contract and unjust enrichment in the alternative. *See* Fed. R. Civ. P. 8(d)(2). The fact that S&K cannot simultaneously recover damages for both breach of contract and unjust enrichment does not preclude it from pleading both theories in its Petition. *See Owen v. Gen. Motors Corp.*, 06-4067-CV-C-NKL, 2006 WL 2808632, at *2 (W.D. Mo. Sept. 28, 2006); *see also In re: Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, 16-02709-MD-W-GAF, 2017 WL 3863866, at *9 (W.D. Mo. Aug. 3, 2017) ("the Court does not dismiss any unjust enrichment claims for preclusion by express contract.").

Next, Defendants assert that S&K's unjust enrichment claim fails because it is only supported by conclusory allegations. Defendants assert that the only "wrongful" conduct alleged is that Bimbo told customers that the distribution routes would be purchased back.[5] However, S&K has alleged a benefit conferred on Defendants, including: the use of S&K's expertise,

---

[5] Defendants also take issue with S&K's reliance on "mere information and belief." Doc. 7 (Suggestion in Support of Motion to Dismiss), p. 7. But, the fact that some of S&K's allegations are pled on information and belief is of no consequence. *See Stamm v. County of Cheyenne, Nebraska*, 4:17CV3146, 2018 WL 2926282, at *15 (D. Neb. June 11, 2018) ("Allegations 'upon information and belief' may state a claim after *Iqbal* and *Twombly*.").

resources, efforts, and relationships to build a distribution network for Barcel products including twenty distribution routes, Doc. 1-2, ¶¶ 12, 18, 20, 79; access to S&K's confidential information regarding its routes, customers, and sales date, *id.* at ¶ 23; an increase in market size to over 1,000 customers, *id.* at ¶ 19; and an increase in sales from a nominal figure in 2008 to over $4 million in 2017, *id.* at ¶ 21. S&K has also alleged Defendants' appreciation of that benefit, including: Barcel's agreement to pay S&K a fair value for its network, routes, and customers, *id.* at ¶ 28; a substantial increase in sales of Barcel product, *id.* at ¶ 21; and Barcel's view of S&K as a "strategic partner," *id.* at ¶ 22. In addition, Defendants' alleged statements to S&K's customers that they would be purchasing S&K's routes, *id.* at ¶¶ 32, 82, supports an inference that Defendants recognized the value of S&K's distribution network. S&K's Petition as a whole permits the inference that Defendants' retention of S&K's distribution network, without compensation to S&K would be inequitable, given S&K's investment in establishing the network. *See id.* at ¶ 18; *see also Miskimen*, 684 S.W.2d at 402 (concluding it would be "manifestly unfair" to terminate distributor's route without compensation).

Therefore, Defendants' motion to dismiss Count IV is denied.

### E. Counts V and VI – Fraudulent Misrepresentation and Omission against Barcel

Counts V and VI allege fraudulent misrepresentation and omission by Barcel. Under Rule 9(b), all averments related to "circumstances of fraud must be pled with particularity." *Munro v. Lucy Activewear, Inc.*, No. 16-4483, 2018 WL 3767338, at *3 (8th Cir. Aug. 9, 2018) (citing Fed. R. Civ. P. 9(b)). A plaintiff must identify "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Munro*, 2018 WL 37673338, at *3 (quoting *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549 (8th Cir. 1997)).

10

Barcel argues that S&K's fraud claims should be dismissed for failure to identify the person making the misrepresentation or omission or when or where the alleged misrepresentations were made. S&K alleges that in 2008, representations were made during negotiations with S&K, verbally over the phone and in person to S&K's principals Neil Leimkuehler and Jose Guerra. While this establishes both a time and place of the alleged misrepresentations and/or omissions, the Petition fails to allege who made the alleged misrepresentations or omissions to S&K. Regardless of whether Defendants "are aware of the individuals involved in the S&K negation process," Doc. 21, p. 13, S&K's claim is insufficient under Rule 9's heightened pleading standard for claims involving fraud. *See Munro*, 2018 WL 37673338, at *3.

Thus, Barcel's motion to dismiss Counts V and VI is granted.

### F. Count VII – Negligent Misrepresentation against Barcel

Count VII alleges that Barcel made multiple negligent misrepresentations, including that S&K would be the exclusive distributor of Barcel products in Missouri and Kansas. Doc. 1-2, ¶¶ 110–17. To state a claim for negligent misrepresentation, S&K must plead that Barcel 1.) supplied information in the course of its business; 2.) because of a failure by the speaker to exercise reasonable care, the information was false; 3.) the information was intentionally provided for the guidance of a limited group of persons in a particular business transaction; 4.) the listener justifiably relied on the information; and 5.) due to the listener's reliance, the listener suffered pecuniary loss. *Roth v. Equitable Life Assur. Soc. of U.S.*, 210 S.W.3d 253, 260 (Mo. Ct. App. 2006).

Barcel argues that S&K's negligent misrepresentation claim should be dismissed because it provides no factual support regarding on how Barcel failed to exercise reasonable care and is a mere recasting of S&K's breach of contract claim. In relevant part, the Petition alleges that Barcel

owed S&K a duty of care based on their "strategic partnership," Doc. 1-2, ¶¶ 22, 114, and that Barcel failed to exercise that care by, among other things, carrying out a scheme to steal S&K's network and not being honest during business negotiations. *Id.* at ¶¶ 13–14, 111–14. A pleading can assert both tort and contract claims as long as independent facts form the basis of the tort. *Overcast v. Billings Mutual Ins. Co.*, 11 S.W.3d 62, 68 (Mo. 2000). The question in determining whether a contract claim is being recast as a tort claim is whether the tort could have occurred even if the breach had not. *Id.* Here, S&K's Petition fails to assert that the alleged "strategic partnership" between S&K and Barcel and corresponding duty of care, existed absent the alleged oral contract between the parties. S&K's negligent misrepresentation claim is thus wholly dependent upon the same facts and allegations of its breach of contract claim.

Barcel's motion to dismiss Count VII is granted.

### G. Counts VIII and IX – Tortious Interference with Contract and Business Expectancies against Bimbo and Tortious Interference with Business Relations and Business Expectancies against Barcel and Bimbo

Count VIII alleges that defendant Bimbo tortuously interfered with S&K's distribution agreement with Barcel, its business expectancy with Barcel and/or its contracts with its drivers by "attempting to steal and in fact stealing S&K's distribution routes and customers, and attempting to recruit S&K drivers along with threats that they will 'soon be out of work.'" *Id.* at ¶¶ 118–26. Count IX alleges that defendants Bimbo and Barcel tortuously interfered with S&K's business relations and business expectancies with customers in the distribution network. *Id.* at ¶¶ 127–34. A viable claim for tortious interference with a contract or business expectancy requires defendants' knowledge and obstruction of "a contract or valid business relationship or expectancy," without justification, resulting in damage. *Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*, 32 S.W.3d 592, 598 (Mo. Ct. App. 2000).

As a preliminary matter, Barcel argues that S&K's tortious interference claims should be dismissed because Missouri law does not permit contract claims to be recast as tort claims.[6] Here, Barcel could be found liable for tortious interference, even if no breach of contract occurred. Neither claim requires the same elements nor facts as proof. *See Overcast*, 11 S.W.3d at 69 (finding claims with no common elements to breach of contract only "tangentially related" and therefore independent).[7] Defendants could have knowingly obstructed S&K's valid business relationships and expectancies with its drivers and customers regardless of whether the alleged oral distribution contract between S&K and Barcel existed, or was breached. Thus, S&K's tortious interference claims are sufficiently independent of the claim for breach of contract.

Defendants also argue that S&K fails to identify a precise contractual relationship, business relationship, or business expectancy with which Barcel and Bimbo allegedly interfered, citing *Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 819 (8th Cir. 2015) (applying Arkansas law).[8] However, under Missouri law, a plaintiff is not required to allege "specific purchasers, negotiations, or contracts entered into" to allege a business expectancy. *See Weicht*, 32 S.W.3d at 598 (citing *Bell v. May Dep't Stores Co.*, 6 S.W.3d 871, 877 (Mo. 1999)). Moreover, S&K's

---

[6] Defendants cite *Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co.*, 2006 WL 1722278, at *2 (E.D. Mo. Jun. 19, 2006) and *Liberty Corp. Capital Ltd. V. Catus*, 2016 WL 4444761, at *3 (E.D. Mo. 2016) in support of this proposition. However, the court's findings in these cases were limited to the fact that "an insured with a dispute against its insurance company cannot substitute a tort claim *when a contract remedy is available*." *Liberty Corp. Capital Ltd.*, 20016 WL 4444761, at *4 (quoting *Ryann Spencer Group, Inc. v. Assurance Co. of America*, 275 S.W.3d 284, 290 (Mo. App. 2008) (italics in original). The availability of a contract remedy remains in question in this case.

[7] The same is equally true for the remainder of S&K's tort claims (Counts X through XII). Further, S&K's misappropriation of trade secrets and malicious trespass claims are statutory causes of action that can be brought along with any other claim S&K might have. *See Liberty Corp. Capital Ltd.*, 2016 WL 4444761, at *3 (recognizing that statutory causes of action and breach of contract actions can be brought together).

[8] Defendants cite no Missouri case law requiring such precision.

distribution agreement with Barcel, and its associated decade-old business relationship is clearly alleged in the Petition. *See* Doc. 1-2, ¶¶ 12–18. S&K pled that Bimbo took over its distribution routes and entered into a third-party contract stating it had the distribution rights before Barcel sent a termination notice to S&K. *Id.* at ¶¶ 30–32. S&K also pled that Bimbo contacted S&K's customers before the distribution agreement was terminated, *id.* at ¶ 32, and threatened and solicited S&K's drivers, *id.* at ¶¶ 47–49, 120. These allegations plead Bimbo's intentional interference with S&K's distribution agreement (contract) with Barcel and the business expectancies associated with that relationship. *See Weicht*, 32 S.W.3d at 598 (finding valid business expectancy in newspaper routes and sale of those routes without pleading specific potential customers). The allegations also plead Bimbo's interference with S&K's business relationships with its drivers. *See Hester v. Barnett*, 723 S.W.2d 544, 564 (Mo. App. 1987) (finding reasonable expectancy in continued relationship with at will employees).

As for Defendants' alleged interference with S&K's business relationship and expectancies with its distribution network customers, S&K alleges that defendants contacted at least three of S&K's customers, "large grocery store chain[s]," before the distribution agreement terminated and induced those customers to refuse to accept deliveries from S&K. Doc. 1-2, ¶¶ 39–42, 127–34. The Petition further alleges that Defendants negatively impacted S&K's customer relationships by withholding product from S&K. *Id.* at ¶43.

Thus, Defendants' motion to dismiss Counts VIII and IX is denied.

### H. Count X – Misappropriation of Trade Secrets against Barcel and Bimbo

Count X alleges that Barcel used S&K's trade secret information regarding its "distribution routes, customer identities, and specific store sales data" and that Bimbo acquired or derived knowledge of and used the same trade secret information without S&K's consent. *Id.* at ¶¶ 135–

43. Under the Missouri Uniform Trade Secrets Act, a misappropriation occurs when a person: 1.) acquires a trade secret while knowing or having reason to know that he or she is doing so by improper means; 2.) discloses it without the owner's consent; or 3.) uses it without the owner's consent. *Cent. Tr. & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 320 (Mo. 2014) (citing Mo. Rev. Stat. § 417.453(2)).

Defendants argue that S&K's misappropriation of trade secrets claim fails because the Petition contains no specific factual allegations as to how Barcel and Bimbo allegedly used S&K's trade secret information. However, the Petition alleges that Barcel, without S&K's consent, provided S&K's trade secret information to Bimbo "so that Bimbo could start the process of wrongfully taking over S&K's routes and customer relationships." Doc. 1-2, ¶ 33. The Petition goes on to allege that Bimbo then used that trade secret information (identification of S&K customers, geographic distribution routes, and customer sales data) to directly solicit S&K's customers before Barcel sent notice of termination to S&K. *Id.* at ¶¶ 37–42.

Therefore, Defendants' motion to dismiss Count X is denied.

I. **Counts XI and XII – Malicious Trespass and Conversion against Barcel and Bimbo**

Count XI alleges that Defendants "maliciously and/or wantonly destroyed S&K's personal property, including but not limited to its exclusive distributorship in the Territory as well as its distribution routes." *Id.* at ¶¶ 144–47. A trespass to personal property includes the wrongful taking of intangible property. *See Weicht*, 32 S.W.3d at 600. Delivery and distribution routes are personal property within the meaning of the malicious trespass statute. *Id.* (citing Mo. Rev. Stat. § 537.330).

Count XII alleges that Defendants took possession of S&K's distribution routes with the intention of exercising control over them, thereby depriving S&K of the right to possess the routes and resulting in damage to S&K in the form of monetary loss and damage to reputation and

15

goodwill. Doc. 1-2, ¶¶ 148–53. Conversion is the "unauthorized assumption and exercise of the right to ownership over personal property of another to the exclusion of the owner's rights." *Weicht*, 32 S.W.3d at 596.

Defendants argue that S&K's claims should be dismissed because S&K fails to articulate how or when its property was destroyed, such that it is impossible for Defendants to prepare a defense. However, the Petition alleges that Defendants destroyed S&K's distribution routes, by stealing those routes and distributing product to S&K customers using those routes. Doc. 1-2, ¶¶ 11, 26–45, 144, 148. The Petition also alleges when this conduct occurred; for example, it states "in 2017 (and possibly before), Barcel and Bimbo agreed to destroy S&K's business . . . and move distribution of Barcel products to within the Grupo Bimbo corporate family." *Id.* at ¶ 29. The Petition goes on to allege that Barcel and Bimbo began to "supply Barcel product to S&K customers themselves" prior to July 23, 2018, and that in "April, May and June 2018, Barcel and/or Bimbo contacted multiple S&K customers and instructed them to stop accepting Barcel product from S&K." *Id.* at ¶¶ 38–39.

Plaintiffs thus have sufficiently stated claims for malicious trespass and conversion. Defendants' motion to dismiss Counts XI and XII is denied.

### J. Count XIII – Civil Conspiracy against Barcel and Bimbo

Count XIII alleges that Defendants had a meeting of the minds to "steal S&K's business," and engaged in "overt acts" in furtherance of that objective, resulting in damage to S&K. Doc. 1-2, ¶¶ 154–58. A claim for conspiracy requires two or more persons with an unlawful objective, after a meeting of the minds, to commit at least one act in furtherance of the conspiracy thereby damaging the plaintiff. *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. 2012). Under

Missouri law, if an underlying tort for civil conspiracy "fail[s] to state a cause of action, then the conspiracy claim fails as well." *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 781 (Mo. 1999).

Defendants argue that S&K's civil conspiracy claim should be dismissed because it fails to state a claim for any underlying tortious or unlawful conduct. However, because the Court finds that S&K has adequately stated a claim with respect to many of the Counts alleged in the Petition, including tortious interference with business relations and business expectancies, misappropriation of trade secrets, malicious trespass, and conversion, the Court rejects this argument. S&K has sufficiently alleged actions taken by Barcel and/or Bimbo in furtherance of their alleged scheme to "steal S&K's business" to support a claim for civil conspiracy.

Defendants also argue that S&K's claim should be dismissed for failure to specify which torts allegedly comprise the conspiracy. However, S&K's reference to "the overt acts alleged above" in the Petition in concert with S&K's explicit incorporation of the factual allegations alleged in the Petition is sufficient to put Defendants on notice of the claim raised against them. Doc. 1-2, ¶¶ 154, 156.

Therefore, Defendants' motion to dismiss Count XIII is denied.

### III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss, Doc. 6, is granted in part and denied in part.

Barcel's motion to dismiss is granted with respect to Counts V (Fraudulent Misrepresentation), VI (Fraudulent Omission), and VII (Negligent Misrepresentation). However, as requested by S&K, the dismissal is without prejudice so that S&K may amend its Petition to specify the name of the individual or individuals who made alleged misrepresentations or

omissions to S&K. Any such amendment must be filed within twenty days of the date of this Order.

Defendants' motion to dismiss is denied in all other respects.


s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: November 15, 2018
Jefferson City, Missouri